IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:17-HC-2084-BO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KEVIN MONTGOMERY, | ) | |
| Respondent. | ) | |

This cause comes before the Court following petitioner's motion to commit respondent, Kevin Montgomery, as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 4248. For the reasons that follow, the Court finds that Mr. Montgomery is not sexually dangerous and orders his release from commitment.

## BACKGROUND

Petitioner ("the government") instituted this civil action pursuant to Title 18 of the United States Code, Section 4248(a), seeking to commit respondent Kevin Montgomery ("respondent" or "Mr. Montgomery") as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons ("BOP") had examined the respondent and issued a preliminary determination that he was a sexually dangerous person within the meaning of the Act [DE 1]. Such certificate stayed the respondent's release from federal custody pending a hearing to determine whether the respondent qualifies for commitment as a sexually dangerous person. The government's petition was filed on April 21, 2017. Respondent's projected release date was November 6, 2017.

On October 11, 2017, the Court conducted an evidentiary hearing in this matter pursuant to 18 U.S.C. § 4247(d). The parties filed proposed findings of fact and conclusions of law on October 4 and 5, 2017. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, and after due consideration of the evidence presented and arguments of counsel, the Court adopts in part respondent's findings of fact and conclusions of law as filed on October 4, 2017. Specifically, the Court adopts sections A (Mr. Montgomery's Background), B (Substance Abuse History), C (Medical History), D (Criminal History), and E (Institutional Adjustment). The Court now holds that the government has failed to satisfy its burden to show by clear and convincing evidence that Respondent is sexually dangerous to others as defined by the Adam Walsh Act.

## DISCUSSION

To order the commitment of a respondent pursuant to § 4248, a court must conclude, after an evidentiary hearing at which the government bears the burden of proof by clear and convincing evidence, that the respondent is as "sexually dangerous person" as defined by the Act. The government must show that (1) the respondent has engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that the respondent suffers from a serious mental illness, abnormality, or disorder; and (3) as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4248(d). ). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted). If the Court finds that the government has satisfied its burden, the individual must be committed to a suitable facility for

2

mental treatment until he is determined to no longer be sexually dangerous to others. 18 U.S.C. § 4248(d).

### 1. Whether the respondent has engaged or attempted to engage in sexually violent conduct or child molestation.

At the outset, the government must demonstrate that respondent has engaged or attempted to engage in sexually violent conduct or child molestation. 18 U.S.C. § 4248(d). The Court finds, by clear and convincing evidence, that respondent has engaged or attempted to engage in sexually violent conduct. Specifically, respondent pleaded guilty to fourth degree sexual assault in 1996, second degree rape in 1997, misdemeanor sexual abuse in 2010, and attempted first degree sexual abuse in 2011. These convictions are sufficient to establish that the government has met its burden on prong one.

### 2. Whether the respondent currently suffers from a serious mental illness, abnormality, or disorder.

To meet its burden on the second prong, the government must prove by clear and convincing evidence that respondent "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. § 4248(d). Civil commitment is limited to individuals whose mental illness renders them dangerous beyond their control. *United States v. Francis*, 686 F.3d 265, 275 (4th Cir. 2012). The determination of whether an individual's mental illness rises to the level of a sexually dangerous person is fact specific as viewed by expert psychiatrists and psychologists. *Id.*

Although the phrase "serious mental illness, abnormality, or disorder" is not specifically defined, the Fourth Circuit has instructed courts that labeling a respondent with a "diagnosis" is merely a starting point and that "the true thrust of the § 4247(a)(6) inquiry [is] whether, on a case-specific basis, the respondent's underlying condition constitutes a serious functional impairment." *United States v. Caporale*, 701 F.3d 128, 137 n.4 (4th Cir. 2012). The Court in

3

*Caporale* further noted that "a mental disorder or defect need not necessarily be one so identified in the DSM in order to meet the statutory requirement." 701 F.3d at 136 (citing *United States v. Carta*, 592 F.3d 34, 39–40 (1st Cir. 2010)). Accordingly, the phrase "serious mental illness, abnormality, or disorder" in the Act is "a legal term of art" to be developed by the courts. *Caporale*, 701 F.3d at 136; *see also Kansas v. Hendricks*, 521 U.S. 346, 359 (*Hendricks*) (explaining that "the term 'mental illness' is devoid of any talismanic significance," and instructing that legislative development of specialized "[l]egal definitions . . . need not mirror those advanced by the medical profession").

Four expert witnesses offered opinions as to whether respondent suffers from a serious mental disorder that is related to his sexual offending. The government's first expert, Dr. Gutierrez, a forensic psychologist with the Bureau of Prisons, diagnosed respondent with stimulant use disorder (cocaine), in a controlled environment, and other specified personality disorder (antisocial features), later amended to antisocial personality disorder. The government's second expert, Dr. Lovestrand, diagnosed respondent with other specified personality disorder (antisocial) and cocaine use disorder, severe, in a controlled environment. Dr. North, who was appointed by the court as an expert in this case, diagnosed stimulant use disorder (cocaine), in a controlled environment, and other specified personality disorder with antisocial features. Finally, respondent's expert, Dr. Plaud, diagnosed respondent with stimulant use disorder, cocaine, in a controlled environment. Respondent was not diagnosed with paraphilia or any other sexual disorder. Only Dr. North and Dr. Plaud actually examined respondent.

The Court has the authority to "decide the proper weight to give the expert opinions." *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013). This Court declines to find the government's second expert, Dr. Lovestrand, credible or to give his testimony weight. Dr.

4

Lovestrand is a forensic psychologist based in California. He did not examine respondent. He had never before been involved in an Adam Walsh Act proceeding, either as a witness or as an evaluating psychologist. [DE 57 at 111]. He has never done any academic work on sex offender psychology. [DE 57 at 132]. He had never previously testified in federal court. [DE 57 at 133]. In the two previous times he testified on the subject of sexual violence in state court, he testified on behalf of the government. *Id.* His report in this case contained errors. He claimed that respondent had been convicted five times for sexual violence against women, which is not true. [DE 57 at 136]. He claimed that respondent has not worked in prison since 2014, which is also not true. [DE 57 at 137]. And he claimed respondent had not participated in a GED class at the time of his report, which is not true. [DE 57 at 139-40]. Dr. Lovestrand's lack of familiarity with particular area of the law, his position as an expert retained by the government, and his limited knowledge of the specifics of this case, including his substantive errors, indicate that his testimony is of limited utility here. The Court also gives great weight to Dr. North and Dr. Plaud's testimony, as they both actually examined respondent. Dr. North's testimony especially merits attention, as he was appointed by the court in this case.

*Substance Abuse Disorder*

Dr. Gutierrez, Dr. Lovestrand, Dr. North and Dr. Plaud all testified that respondent suffers from a debilitating substance abuse problem. Drs. Gutierrez, North and Plaud gave him a diagnosis of stimulant use disorder (cocaine), in a controlled environment. This Court agrees with that finding: respondent's history of addiction to crack cocaine is lengthy and detailed, and respondent's own testimony corroborates it.

*Personality Disorder*

5

The experts in this case did not uniformly determine respondent suffers from an additional psychological condition. Dr. North, who did interview respondent, diagnosed respondent with "other specified personality disorder with antisocial features." Dr. Gutierrez, who did not interview respondent, originally had the same diagnosis, which he later changed to the more severe diagnosis of "antisocial personality disorder." Dr. Plaud, who did interview respondent, did not find that he suffered from a personality disorder.

The existence of a personality disorder is indicated by "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture." DSM-V at 645. The DSM accounts for several types of personality disorders. Other specified personality disorder is a fallback position. DSM-V 301.89 (F60.89) ("This category applies to presentations in which symptoms . . . do not meet the full criteria for any of the disorders in the personality disorders diagnostic class."). In diagnosing a personality disorder, it is key not to attribute to a personality disorder what can be better explained as a manifestation of another disorder. DSM-V at 647.

First, Dr. Gutierrez's changing diagnoses, and his conflicting testimony on the stand, indicate that his evaluation of respondent's personality issues do not merit significant weight. Dr. Gutierrez was unable to clearly explain the reasoning behind changing his diagnosis or what evidence underpinned either of his diagnoses, especially as he did not interview respondent. The evidence for the escalation of his diagnosis to "antisocial personality disorder," which requires a finding of problematic conduct prior to age 15, is limited to a reference in Dr. North's report that respondent had shot a b.b. gun at the age of 14. [DE 57 at 105]. Dr. Gutierrez also did not account for the period of time between the b.b. gun even and respondent's arrest at age 26,

during which he did not have any evidence of a personality disorder. For these reasons, the Court does not find that Dr. Gutierrez's diagnosis is supported by the evidence.

Dr. North testified that he had found respondent suffered from a conduct disorder, but that the features of conduct disorder were directly aligned with his substance abuse problem. Dr. North testified that there was not enough evidence of a conduct disorder before age 15 to lead to a diagnosis of antisocial personality disorder. [DE 57 at 149]. Dr. North went on to testify that the b.b. gun shooting incident "plus he was drinking, smoking marijuana and truancy, and that was the extent of evidence of conduct disorder." *Id.* He was not arrested again until he was 26 years old. Dr. North testified that "if he had been arrested around age 18 or 19 and had a long history of arrests . . . I probably would have diagnosed him with antisocial personality disorder. But instead he was working as a security guard when he was around 21 and he didn't have any arrests and he wasn't using drugs during that time." *Id.* Dr. North specifically did not diagnose respondent with any paraphilia, noting that there was no evidence that sexual violence "was used for erotic pleasure." [DE 57 at 15]1.

Dr. North went on to testify that absent cocaine use by respondent, he was not sure the antisocial features presented at all. [DE 57 at 151]. ("The antisociality seems to be directly correlated and perhaps entirely due to the cocaine use."). This finding was confirmed by Dr. Plaud's testimony. Dr. Plaud did not diagnose respondent with a personality disorder, testifying that any personality disorder traits stemmed directly from either respondent's difficult upbringing or his history of substance abuse. [DE 57 at 180]. According to Dr. Plaud, "before drugs came into his life with any significance, he actually acquitted himself fairly well." *Id.* Respondent, whose mother was twelve years old when he was born, gained employment through Job Corps and worked as a security guard prior to his first encounter with crack cocaine, and

7

then his first arrest at the age of 26. *Id.* Dr. Plaud testified that "it's nonsense to diagnose him with antisocial personality disorder. When he's not on the drugs, he's not antisocial behaviorally speaking." *Id.* Dr. Plaud also testified that a diagnosis of other specified personality disorder is "equally nonsensical for many of the same reasons." [DE 57 at 181]. Additionally, respondent's relatively clean track record in prison was probative. Noting that respondent had one infraction over the course of his term of incarceration, Dr. Plaud testified, "if this guy is floridly antisocial, I would think he would have a lot more issues . . . he would have a disciplinary report yhat might run pages and pages and pages. And he doesn't have it." [DE 57 at 191].

This Court finds that respondent's addiction to crack cocaine led to the behaviors Drs. Gutierrez and Lovestrand characterized as evidence of a separate personality disorder. The Court heavily credits Dr. North and Dr. Plaud's testimony to that effect. The scattered evidence of respondent's struggles in society are directly attributable to his crack cocaine addiction.

The fact that respondent did not suffer from the sort of antisocial effects or difficulty responding to norms prior to his first brush with crack cocaine is highly probative. As Dr. Plaud emphasized in his testimony, respondent's first arrest was at age 26. Respondent was working as a security guard and hoping to become a police officer. These facts are at odds with the way personality disorders are evaluated and listed in the DSM-V, as diagnoses that manifest at a young age and continue to present. For the above reasons, this Court finds that the only disorder respondent suffers from is stimulant abuse disorder (cocaine), in a controlled environment.

*Seriousness*

As the Court has determined respondent suffers from substance abuse disorder, the inquiry must now shift to whether it is serious under the § 4248 framework. This Court finds that it is not.

"A diagnosis of [a mental disorder] is merely the starting point for the court to consider the true thrust of the § 4247(a)(6) inquiry—whether, on a case-specific basis, the respondent's underlying condition constitutes a serious functional impairment." *United States v. Caporale*, 701 F. 3d 128, 137 n.4 (4th Cir. 2012). The government, again, bears the burden of proving by clear and convincing evidence that a particular disorder is a serious functional impairment under the Act. At the outset, the nature of respondent's diagnosis is relevant. Respondent has not been diagnosed with paraphilia or any disorder based on sexual offending. The link between respondent's disorder and its seriousness within the framework mandated by the Adam Walsh Act is therefore more fragile, as the purpose of the seriousness inquiry is specifically related to the risk of further sexual violence or child molestation.

The Fourth Circuit has not ruled squarely on the question of whether so-called use disorders are "serious" under the Act. But, in reversing a commitment of an individual found to suffer from both alcohol use disorder and antisocial personality disorder, the Court mentioned the inherent problems in basing a civil commitment scheme on "two mental disorders that are undisputedly prevalent in the nationwide prison population." *United States v. Antone*, 742 F.3d 151 (4th Cir. 2014) (Citing studies that show 50 to 70 percent of prisoners suffer from antisocial personality disorder and 45 percent of federal prisoners meet criteria for drug dependence or abuse.). This concern is warranted. The Adam Walsh Act is an extraordinary remedy for extraordinary circumstances. If half the prison population meets step two of this inquiry, then the limited ambit of the Act, which underpins its constitutionality, is undone. *See United States v. Comstock*, 560 U.S. 126, 142 (2010) ("[The Act] is a modest addition to a longstanding federal statutory framework."). Non-paraphilic disorders have a higher uphill climb, as they should.

In one previous instance in this district, alcohol use disorder was found to be "serious." *United States v. Gloshay*, 5:08-HC-2051-BR (E.D.N.C. June 4, 2012). In that case, respondent's continued drinking—even while incarcerated—and therefore continued impairment of day-to-day functioning led to the determination that the dependence was serious. *Id.* at 8-9. And even in that case, which was not appealed, the district court acknowledged that "alcohol dependence may not be considered serious in every case." *Id.* at 9.

Respondent's history over the past six years is determinative. The government provided no convincing evidence of the "grip strength of the mental illness on the inmate" currently, which is required of them by law. *United States v. Wooden*, 693 F.3d 440, 460 (4th Cir. 2012). Respondent completed a drug education course while incarcerated in Arizona, and a 24 hour nonresidential treatment program in North Carolina. [DE 57 at 92]. He has no record of abusing drugs while in prison, even though the government's own expert acknowledged inmates can illicitly access drugs. [DE 57 at 108]. Dr. North heavily credited respondent's own commitment to staying sober. [DE 57 at 153].

There may be a case, in the future, where a substance abuse disorder is so crippling, its grasp on an individual so overwhelming, and its relationship to a pattern of sexual offending so ironclad, that a finding of "serious" under this prong would be permissible. Perhaps. But the government certainly has not established facts to sustain that conclusion here.

Because the government's evidence has failed to instill in the Court a "firm belief or conviction, without hesitancy" that respondent currently suffers from a serious mental disorder that would render him sexually dangerous to others, the Court finds that the government has failed to prove this prong by clear and convincing evidence. *See Jimenez*, 269 F.3d at 450.

10

3. **Whether as a result of the illness, abnormality, or disorder, the respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released.**

In the alternative, if respondent did suffer from a serious mental illness, abnormality, or disorder as defined under the Act, commitment is nonetheless not warranted in this case because the government has not met its burden to establish, by clear and convincing evidence, that respondent will have serious difficulty in refraining from sexually violent conduct if released. As noted by the Fourth Circuit in *United States v. Hall*,

> [t]he "serious difficulty" prong of 4248's certification refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interest. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety . . . provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 532 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.").

554. F.3d 456, 463 (4th Cir. 2012). The Fourth Circuit has found that in weighing the serious difficulty prong, it is appropriate to consider the following factors: failures while on supervision; resistance to treatment; continued deviant thoughts; cognitive distortions; actuarial risk assessments; impulsiveness; and historical offenses. *Wooden*, 693 F.3d at 440. It should be noted, however, that this inquiry "will not be demonstrable with mathematical precision." *Kansas v. Crane*, 534 U.S. 407, 413 (2002).

The Court therefore must consider both static and dynamic factors, historical behaviors and present impairment, in order to adequately assess whether respondent will have a serious difficulty in refraining from sexually deviant behavior if released. The Court cannot consider

11

historical facts to the exclusion of present behavior because reliance on past behavior does "not allow for a respondent's subsequent growth." *United States v. Antone*, 742 F.3d 151, 169 (4th Cir. 2014) (holding an expert's opinion based solely on past behavior does not satisfy the government's heightened burden). Because of this, the Court declines to fully credit actuarial analyses and expert witness testimony that rely solely on respondent's past behavior to determine his current volitional impairment.

Petitioner claims that respondent will have a serious difficulty refraining from sexually dangerous conduct because of his addiction to crack cocaine, arguing that respondent's history of convictions for sexual assault while abusing the drug demonstrate that he is a compulsive offender. As discussed below, the Court finds that the government has not carried its burden.

To begin, the Court notes that Dr. North, who was originally retained as a court appointed expert in this case, was not called by the government because Dr. North did not find that respondent merited commitment. This operates to disfavor both the government's posture in this case generally and the reliability of the experts it did choose to call.

Next, this Court gives Dr. Gutierrez's testimony little weight. Dr. Gutierrez testified at his deposition that he did not distinguish in this case between those who choose to break the law and those who are unable to. [DE 57 at 109]. This is at odds with the purpose of the inquiry here. Additionally, when evaluating respondent's historical offenses, Dr. Gutierrez relied, in part, on false information. [DE 57 at 10]3. Dr. Gutierrez also testified that though respondent was acquitted of one particular sexual assault charge, he still found it probative because "sometimes juries don't always get things right." [DE 57 at 88]. Dr. Gutierrez's testimony as to respondent's impulsivity or other lack of control was focused on respondent's past behavior to the exclusion

of present behavior, including his experiences on supervised release over 20 years ago. [DE 57 at 96].

The Adam Walsh Act applies to individuals who lack volitional control, not those who may, in the future, go on to commit crimes. *See* 18 U.S.C. § 4247(a)(6). Additionally, the Act is specifically limited to persons who have engaged or attempted to engage in sexually violent conduct or child molestation. 18 U.S.C. § 4247(a)(5). Both of these constraints work against the government here. Because the argument is so attenuated, petitioner must prove, by clear and convincing evidence, two particularized issues: first, that respondent has no volitional control over the abuse of crack cocaine; and second, that when respondent abuses crack cocaine, he has no volitional control over ensuing acts of sexual violence. The Court assumes without deciding that this dual inquiry as to volitional control, including over impulses completely unrelated to sexual violence or child molestation, is even permissible under the Act. The government has not made the needed showing.

The first inquiry is related to the above finding that respondent's substance abuse disorder is not serious. Even for a substance abuse disorder that is serious under the Act, step three would require a specific showing that it actually affects respondent's volitional control.

Respondent has been incarcerated since 2011. In those years, he testified that has never attempted to access or use crack cocaine, and he never had any infractions related to illegal drugs. [DE 57 at 78]. While federal prison is an environment in which access to controlled substances is severely limited, that access is still possible, and respondent has not accessed them. [DE 57 at 197]. Dr. North and Dr. Plaud both testified that in their expert opinions, respondent's drug addiction did not now manifest itself such that he lacks volitional control.

In evaluating his present impairment, Dr. North testified that "he's done well while he's been locked up . . . he has taken all the drug education stuff that he can." [DE 57 at 152]. Dr. Plaud also testified that his behavior in prison has been excellent: "[H]e's clean, he's sober, he understands the rules, he pays attention to the rules, he's responsive to the rules . . . he's working. He's getting along with other people. He's doing his best and he's doing very well." [DE 57 at 181]. Dr. Plaud testified that he did not find a generalized lack of control. [DE 57 at 185]. Even fully crediting the personality disorder diagnosis presented by the government in this case, Dr. Plaud testified that "the relationship between these diagnoses and sexual recidivism, sexual risk, is miniscule. So it's not really a relevant disorder." [DE 57 at 182]. When the government questioned Dr. Plaud on this question, it argued respondent's own testimony of his intent stay clean indicated he could not do so, as it stemmed from his narcissism. [DE 57 at 200]. The Court only mentions this argument in order to make its failure clear. The government has not met its burden.

Second, the evidence of respondent's lack of volitional control as to sexual violence absent the use of crack is nonexistent. This is because the sexual assault convictions respondent has sustained are inseparable from his drug abuse. Dr. Gutierrez emphasized the fact that respondent had not received sex offender treatment, but was unable to square that fact with the relationship between respondent's drug addiction and history of sexual violence, or how rare it is for an Adam Walsh Act proceeding to involve the kind of conduct at issue here. [DE 57 at 98-99]. And even he acknowledged that "there's nothing in his past that would suggest" respondent would be sexually dangerous without abusing crack cocaine. [DE 57 at 101]. Dr. North, when noting that respondent had not undergone sex offender treatment, testified that "I don't think he has a sexual problem if he's not using cocaine." *Id.*; *Id.* at 153.

Dr. North also testified that respondents sometimes are advised by their lawyers to decline sex offender treatment in prison, and that refusal does not itself indicate a refusal to accept responsibility. *Id.* Dr. Plaud testified that the lack of a paraphilia diagnosis is important here, as it shows that respondent has no sexual disorder or compulsion related to sexual offending. [DE 57 at 187-88]. Respondent's age is also a protective factor, as he is 53 years old. He will be nearly 70 when his fifteen-year term of supervised release ends. [DE 57 at 106; 141; 186]. Federal supervised release is a highly structured environment and includes regular drug testing as a matter of course. [DE 57 at 191]. As there is no evidence that respondent's sexual offending ever occurs without the presence of drug abuse, supervised release would be even more effective in this circumstance than in others.

In standard § 4248 cases, where there is an underlying paraphilic motivation, the Court must contextualize a number of factors in order to determine whether it is likely an individual will act on that motivation going forward. Despite the presence of that pathology, not every candidate meets the standard for commitment, because there is a clear distinction between feeling a desire and being unable to keep from acting on it. The government has not provided any evidence here to indicate respondent has ever been enacting an uncontrollable sexual urge. Respondent's sexual offenses were always committed against a woman he was using drugs with. The sexual violence was secondary to and informed by the drug use. He committed those crimes, and he was convicted of and sentenced for them. The inquiry here is not whether his actions were reprehensible. They were. The only question before this Court is whether the government has made a clear and convincing showing that respondent lacks volitional control such that he would have serious difficulty refraining from committing such acts in the future. It has not.

The sum total of the government's case is as follows: respondent has a substance abuse addiction that has effectively destroyed his life. While abusing crack cocaine, he committed acts of sexual violence. He may, upon release from federal custody, use crack cocaine again, and, under the influence of that drug, he may commit more acts of sexual violence. Put another way, he is the "dangerous but typical recidivist convicted in an ordinary criminal case." *Kansas v. Crane*, 534 U.S. 407, 413 (2002). As the Supreme Court has held, such individuals are not candidates for civil commitment. *Id.* The government has not proven by clear and convincing evidence that respondent lacks volitional control such that he would have serious difficulty refraining from sexually violent conduct or child molestation.

## CONCLUSION

For the foregoing reasons, judgment shall be entered in favor of the respondent, Kevin Montgomery, and against the petitioner, the United States of America. The government is ORDERED to release the respondent to the custody of the appropriate United States Probation Office at the termination of his sentence and this action is hereby DISMISSED.

SO ORDERED, this 17 day of April, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTpRICT JUDGE

16